UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, as Receiver for
VALHALLA INVESTMENT PARTNERS,
L.P.; VIKING FUND, LLC; VIKING IRA
FUND, LLC; VICTORY FUND, LTD.;
VICTORY IRA FUND, LTD., AND
SCOOP REAL ESTATE, L.P.,

        Plaintiff,

v.                                      Case No. 8:10-CV-150-T-17MAP

DIANA W. CLOUD,

        Defendant.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

       This cause is before the Court on the report and recommendation (R&R) issued by Magistrate Judge Mark A. Pizzo on December 17, 2012 (Doc. 70). The magistrate judge recommended that: 1) the Receiver's motion for summary judgment (Doc. 53) be granted and that the Clerk be directed to enter judgment for the Receiver and against Cloud in the amount of $763,539.83; 2) the Receiver's renewed motion for partial summary judgment (Doc. 42) be found moot; and 3) all pending motions be denied and the Clerk be directed to close the case. The R&R also recommended that the Receiver's request for pre-judgment interest be denied.

Pursuant to Rule 6.02, Rules of the United States District Court for the Middle District of Florida, the parties had fourteen (14) days after service to file written objections to the proposed findings and recommendations, or be barred from attacking the factual findings on appeal. Objections and responses to objections to the report and recommendation were filed (Docs. 72, 73, 74 and 75).

## STANDARD OF REVIEW

Under the Federal Magistrate's Act (the "Act"), Congress vested Article III judges with the power to authorize a United States Magistrate Judge to conduct evidentiary hearings. 28 U.S.C. § 636. A District Court Judge may designate a United States Magistrate Judge to conduct hearings, including evidentiary hearings, in order to submit proposed findings of fact and recommendations (i.e. R & R) for the disposition of motions for injunctive relief. 28 U.S.C. § 636(b)(1)(B). Section 636(b)(1) also states that a judge of the court shall make a de novo determination of those portions of the R & R to which objection is made. 28 U.S.C. § 636(b)(1).

When a party makes a timely and specific objection to a finding of fact in the report and recommendation, the district court should make a de novo review of the record with respect to that factual issue. 28 U.S.C. § 636(b)(1); **U.S. v. Raddatz**, 447 U.S. 667 (1980); **Jeffrey S. v. State Board of Education of State of Georgia**, 896 f.2d 507 (11th Cir. 1990). However, when no timely and specific objections are filed, case law indicates that the court should review the findings using a clearly erroneous standard. **Gropp v. United Airlines, Inc.,** 817 F.Supp. 1558, 1562 (M.D. Fla. 1993).

**DISCUSSION**

A. Background

      The Magistrate Judge filed an excellent Report and Recommendation, which this Court incorporates by reference. Therein he outlined the basics of this cause. He stated:

> This is one of many cases in this division emanating from a Securities Exchange Commission enforcement action aimed at dealing with the aftermath of a massive ponzi scheme perpetrated by Arthur Nadel, a hedge fund manager. *See S.E.C. v. Arthur Nadel, et al.,* Case No. 8:09-cv-87-T-26TBM. After the SEC's action and the appointment of Burton Wiand as the Receiver, Nadel pled guilty in the Southern District of New York to a fifteen count indictment charging him with securities fraud, mail fraud, and wire fraud surrounding the events precipitating the enforcement action. The Receiver has sued numerous hedge fund investors, including Diana Cloud ("Cloud"), seeking to claw back "false profits" under two theories grounded on the same illegal scheme the indictment tracks: avoidance of fraudulent transfers under Florida's Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.101,*et seq.* ("FUFTA"), and unjust enrichment.[1] Currently, the Receiver moves for summary judgment on a precise but critical issue to the determination of this action – Nadel operated the hedge funds as a ponzi scheme during the distributions of "false profits" to Cloud (*see* docs. 42, 53)... (R&R pgs. 1-2).

Further, the R&R concisely set out the question before the Court: "...the case-specific questions should be: Did Nadel operate the hedge funds as ponzi scheme when he made the distributions to Cloud, and if so, is the evidence so one-sided that the Receiver is entitled to summary judgment on this issue as a matter of law?"... (R&R pg. 4).

The R&R sets out the following information as to the position of this defendant, Cloud, in the activity of Mr. Nadel:

---

[1] These types of cases are often called "clawback" actions.

> Cloud is one of the investors who experienced a net gain or "false profits." According to Yip, Cloud deposited a total of $5,793,830.79 in Nadel's scheme between November 2004 and January 2007, all in Scoop Real Estate. Cloud received distributions totaling $6,557,370.62: $2,757,370.62 from Victory Fund on January 9, 2008, and $3,800,000 from Scoop Real Estate between June 1, 2005, and October 9, 2008. Hence, the "false profits" amount to $763,539.83 (the amount received from the scheme in excess of the amounts invested). *See* Yip Decl.¶ 3, Sept. 28, 2012; doc. 53 at 1-2. Cloud admits to receiving transfers in these amounts. (R&R pg. 19).

The Receiver seeks judgment from this Court in the amount of $763,539.83, the amount of the "false profits," and the Magistrate Judge recommends that the Court grant the request. The Magistrate Judge succinctly says:

> [T]he summary judgment record overwhelmingly points to the fact that Nadel operated the hedge funds as a ponzi scheme by the time Cloud received her first distribution in June 2005. In sum, the Receiver's forensic accountant confirms what Nadel admitted in his criminal proceedings and that court adjudicated. Even when the summary judgment record is viewed in Cloud's favor, Cloud offers little to overcome the Receiver's properly supported motion. (R&R pgs. 12-13).

B. Objections

The Receiver filed objections to the R&R (Doc. 72) only as to the recommendation of the Magistrate Judge that the request for pre-judgment interest be denied. The Receiver makes arguments not raised before the Magistrate Judge but the Court is not persuaded by those arguments. The Court agrees with the R&R that:

> An award (of prejudgment interest), however, is grounded in equity and not absolute. *Blasland, Bouck & Lee, Inc. v. City of North Miami*, 283 F.3d 1286, 1297-98 (11th Cir. 2002) (applying Florida law). Florida courts apply various considerations when evaluating the equities: the extent the plaintiff's conduct contributed to the delay between the injury and judgment; whether the prevailing party failed to mitigate damages; in matters involving public bodies, and in choosing between innocent victims, it is inequitable to put the burden of paying interest on the public. *Id.* The list is obviously illustrative as each case is different. But the driving focus demands balancing the equities at hand. As the Florida supreme court (sic) has said: "interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response

  to considerations of fairness.  It is denied when its exaction would be inequitable." *Flack v. Graham*, 461 So.2d 82, 84 (Fla. 1984) quoting *Board of Commissioners of Jackson County v. United States,* 308 U.S. 343, 352 (1939).  (R&R pgs. 29-30).

The Court find that the equities support the denial of the request for prejudgment interest.

  The Defendant filed objections to the report and recommendation (Doc. 74) and the Receiver responded thereto (Doc. 75).  The Defendant concedes that many issues were properly disposed of by the R&R but claims that "there do exist some limited defenses and underlying facts that must be properly adjudicated by the trier of fact." (Doc. 74, pg. 4). One of these issues is whether a newspaper article, from January 18, 2009, raised an issue of fact as to when the Receiver first learned of the fraudulent transfers to defendant and the ultimate question of statute of limitations.   The Magistrate Judge addressed this and found that: "But, the article does not create a material dispute of fact as to when the Receiver knew of the distributions to Cloud, as it does not indicate when the Receiver knew or could reasonably have known of the transfers to Cloud, and Cloud has not submitted any evidence on this issue." (R&R pg. 26).

  The other issue raised is the alleged failure of the Receiver to mitigate damages and the defendant's claim that the Receiver's claims should be reduced due to this failure.  The Magistrate Judge also addressed this issue:

> ...Cloud maintains the Receiver failed to avail himself of an opportunity to mitigate damages.  She posits that any sums she received from Nadel were transferred to a "proximate transferee," Beau Diamond, another ponzi scheme operator, and resulted in a total loss to her.  She claims that the Receiver refused to submit a proof of claim to the Trustee of the Diamond receivership and has otherwise failed to mitigate the damages sought against her.  Hence, it seems that Cloud claims she should be able to set-off the false profits transferred to her forming the basis for this cause of action against the losses she incurred as a result of her investment in the Beau Diamond ponzi scheme.  As previously explained, FUFTA avoids all "false profits."  That Cloud elected to re-invest or roll over her "winnings" is not relevant for FUFTA purposes because those

> "winnings" represented an illusory transfer of profits. In short, Cloud's profits were not hers to have. Her decision to invest the "profits" she received from her investments in Nadel's scheme need not be taken into account in calculating her false profits. To credit Cloud's re-investment would contradict the equitable considerations courts apply in clawback cases. Set-off is an equitable concept, *see Durham Tropical Land Corp. v. Sun Garden Sales Co.*, 151 So. 327, 328 (Fla. 1932); yet, and despite the injustice suffered by Cloud who lost money in the Beau Diamond scheme, it is difficult to fathom how the defense would apply here. And, Cloud's argument that the Receiver failed to mitigate damages by neglecting to file a claim with the trustee of Beau Diamond's receivership is misplaced, as it is Cloud's responsibility, not the Receiver's, to file such a claim. In sum, I find equitable set-off, no matter the Court's sympathies, does not apply. (R&R pgs. 26 and 27)

The Court agrees with this analysis. Further, the Court finds the excellent analysis of the Report and Recommendation and the arguments of the Receiver persuasive on all of the issues raised in the objections of the defendant and incorporates them by reference herein.

The Court finds this case, along with the other Wiand cases, to be unfortunate all the way around. The people involved with Mr. Nadel and his schemes were many. Ms Yip opined that:

> ...Nadel in combination with Christopher Moody and Neil Moody raised at least $327 million from investors between May 1999 and January 2009. The money was raised in connection with more than 700 investor accounts. The money was raised as part of a single, continuous Ponzi scheme. Investors received statements ("Investor Statements") on a monthly basis for each of their respective accounts. These Investor Statements showed purported appreciation and increase in Investor Account balances that were in fact not true. Providing these fictitious balances not only maintained the investors "in the dark" about the actual performance of these funds but just as important, it served as the basis for the Management Fees that the Fund Managers charged to each of the Investor Accounts. (R&R pg.14).

These people were injured and may never be made whole. The role of the Receiver in this case, and similar cases, is to "to bring suits... against ponzi scheme investors to the extent that investors have received payments in excess of the amounts invested and those payments are avoidable as fraudulent transfers. *Donell v. Kowell,* 533 F.3d 762, 770 (9th Cir. 2008) ('the policy justification is ratable distribution of remaining assets among all defrauded investors').

Hence, the innocent 'winners' in a ponzi scheme should not be permitted to 'enjoy an advantage over later investors sucked into the ponzi scheme who were not so lucky.' *Id.* citing *In re United Energy Corp.,* 944 F.2d 589, 596 (9th Cir. 1991)." (R&R pg. 9).

The Court has reviewed the report and recommendation and made an independent review of the record. Upon due consideration, the Court concurs with the report and recommendation. Accordingly, it is

**ORDERED** that the report and recommendation, December 17, 2012 (Doc. 70) be **adopted** and **incorporated by reference**; the objection of both parties (Docs. 72 and 74) be **overruled**; the Receiver's motion for summary judgment (Doc. 53) be **granted**; the Receiver's renewed motion for partial summary judgment (Doc. 42) be found moot**;** the Clerk is **directed** to enter judgment for the Receiver and against Cloud in the amount of $763,539.83; and the Receiver's request for pre-judgment interest be **denied**. The Clerk of Court is directed to close this case and to terminate any other pending motions.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 23rd day of January, 2013.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record
Assigned Magistrate Judge